UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
JEAN AZOR,

                Plaintiff,

- against –

CITY OF NEW YORK, et al.,

                Defendants.
---------------------------------------------------------- x

**MEMORANDUM & ORDER**

08 CV 04473 (RJD) (LB)

DEARIE, District Judge.

    Plaintiff Jean Azor alleges that New York City police officers planted a gun in his car during a traffic stop in Brooklyn. He sues the City and the officers for setting him up. However, Azor pleaded guilty to attempted gun possession, and Heck v. Humphrey prevents Azor from bringing this claim. 512 U.S. 477, 486-87 (1994). Plaintiff alleges additional causes of action; the Court treats the rest of his claims summarily. Defendants moved to dismiss plaintiff's claims under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons below, defendants' motion is granted.

    The following facts are derived from plaintiff's complaint.

    On October 16, 2008, three New York City police officers in an unmarked car pulled over plaintiff Jean Azor. Compl. at ¶ 25. Azor was making a legal traffic turn at the corner of Rockaway Parkway and New York Avenue in Brooklyn. Id. Azor is African-American and a practicing Rastafarian. Id. Defendants Christopher Carita, Scott Kienle, and Kevin Devine did not identify themselves to Azor, but they asked for his license and registration. Compl. at ¶¶ 26-27. Azor complied, and the officers deemed his identification valid. Id. Azor alleges that he "was compelled to remove himself from the vehicle" while the defendants searched the entire

vehicle, including the trunk and the hood. Compl. at ¶¶ 27-28. The defendants also "roughly grabbed" and "pushed" Azor, searched his pockets, and removed his money. Id. at ¶¶ 29, 34. Azor did not consent to any of the searches. Id. at ¶¶ 28-29. The defendants "made numerous abusive comments [about Azor's] religion" and "brutally verbaliz[ed]" him as "a thief and unfit member of society." Id. at ¶ 35. The defendants then told Azor that they had discovered a firearm inside his car's hood and "pushed" him into the police car. Id. at ¶ 37. Azor alleges that the defendants planted the weapon because of his parolee status. Plf. Reply and Plf. Obj. at ¶¶ 5, 8.

Before taking Azor to the 67th precinct station, the defendants drove him "around the city in search of 'some of his crim-ies,'" telling Azor that he "was now facing 'FED' time as a career offender." Compl. at ¶ 38 (emphasis original). At the station, the defendants photographed and searched Azor, calling him a "'Fucking Nigger' when [he] did not cooperate." Compl. ¶ 41. They took from Azor a pocket-sized Bible and money. Plf. Obj. at ¶ 2; Compl. at ¶ 34. Azor was placed in a holding cell where he alleges that he was unable to pray and was denied vegetarian or Kosher food. Compl. at ¶¶ 43, 58-59; Plf. Obj. at ¶ 2. The defendants ignored Azor's requests for "proper head covering, prayer materials and organic provisions." Compl. at ¶ 57. Defendants also prevented Azor from using a telephone to call an attorney or his family, despite his request. Compl. at ¶¶ 44, 60. Azor alleges that the defendants told him that he "'ain't ever gonna see day light [sic] again . . . he is one [sic] [of the] Louima people.'" Id. at ¶ 46. Azor spent twelve total hours in the holding cell "without adequate soap, water, prayer towels." Id. at ¶ 47. Although the defendants never told Azor their names, one gave Azor a scrap of paper with a telephone number and the name "Carita" on it. Id. at ¶ 49. The defendants eventually

returned Azor's money but they retained his vehicle and pocket Bible. Plf. Obj. at ¶¶ 2-3; Compl. at ¶ 42.

On July 21, 2010, Azor pleaded guilty to attempted criminal possession of a weapon in the third degree. See ECF Docket # 31, Letter from P. DePaul, Assistant Corporation Counsel to J. Dearie (8/2/10). Azor was sentenced to 1.5-3 years' incarceration and is in custody. See Inmate Information, New York State Dep't of Corrections and Cmty. Supervision, nysdocscslookup.docscs.ny.gov (last visited 3/23/2012). He filed a *pro se* complaint under 42 U.S.C. § 1983, alleging violations of his state and federal constitutional rights and state law tort claims related to the defendants' pre-arrest search of his vehicle and pockets, his treatment at the 67th precinct after arrest, and the loss of his car, and requesting declaratory relief.[1] Azor also alleges violation of his rights under an international treaty and 42 U.S.C. § 1988.[2] Plaintiff proceeds *in forma pauperis*. ECF Docket # 4, Order by Magistrate Judge Bloom (11/14/08). In addition to the officers listed above, Azor's complaint names as defendants the City of New York ("the City") and the New York City Department of Correction ("the DOC"). On October 18, 2010, Magistrate Judge Lois Bloom ordered that Azor's complaint would not be amended to add defendants identified as "Supervising Officer(s) 67th Pct. on 10/61/08" because plaintiff failed to allege their personal involvement. ECF Docket # 36 (10/18/10). This Court considers Azor's claims against Defendants Carita, Kienle, Devine, the City, and the DOC. Defendants

---

[1] Plaintiff alleges at least twenty different violations. Because he is proceeding *pro se*, the Court holds his complaint to a less stringent pleading standard. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).
[2] There is no cause of action under either the Universal Declaration of Human Rights (Joyner-El v. Giammarella, 2010 WL 1685957, at *3 n.4 (SDNY Apr. 15, 2010) (Buchwald, J.)) or § 1988 (Roundtree v. New York, 778 F. Supp. 614, 618 (EDNY 1991) (Glasser, J.)). These claims are dismissed.

Carita and Kienle answered Azor's complaint on September 27, 2010. On May 31, 2011, all defendants moved to dismiss under Rule 12(b)(6).[3]

A. Standard of Review

When a defendant moves to dismiss for failure to state a claim after answering, the Court construes the motion as one for judgment on the pleadings under Rule 12(c). Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (noting Rule 12(b)(6) states motion "shall be made before pleading if a further pleading is permitted"). Because defendants Carita and Kienle answered plaintiff's complaint prior to filing their motion to dismiss, the Court treats their motion as one under 12(c). The Court treats the motion of the remaining defendants, who did not answer plaintiff's complaint, but who joined Carita and Kienle's motion to dismiss, as one under 12(b)(6). The analysis of both motions is the same. "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Id. To avoid dismissal under 12(b)(6), plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Kitchen v. Phipps Houses Group of Cos., 380 Fed. Appx. 99, 100 (2d Cir. 2010) (quoting Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 570 (2007)) (affirming dismissal of *pro se* plaintiff's complaint). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In assessing a motion to dismiss under 12(b)(6), this Court relies on the facts and allegations in the complaint, including any documents incorporated by reference or attached as exhibits. Blue Tree Hotels Inv. (Canada),

---

[3] The DOC is a "non-suable entity" under Chapter 17 § 396 of the City Charter: "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency." Therefore, the Court dismisses the DOC and considers any claims alleged against the DOC as against the City. See Abreu v. New York, 657 F. Supp. 2d 357, 361 n.2 (EDNY 2009) (dismissing DOC as non-suable entity).

4

Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). It may also consider public records. Id. The Court reads all facts in the light most favorable to the plaintiff. Id.

Courts hold *pro se* complaints to "less stringent standards" than those drafted by lawyers. Haines, 404 U.S. at 521. Although "liberally construed," *pro se* complaints must still meet procedural requirements. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) (applying more generous pleading standard under Conley v. Gibson, 355 U.S. 41, 45-46 (1957) and still dismissing *pro se* claims); see also Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009) (applying Twombley standard to *pro se* complaint and affirming 12(b)(6) dismissal).

### B. Heck-barred claims

Under the Supreme Court's ruling in Heck v. Humphrey, a prisoner plaintiff in state custody seeking relief under § 1983 "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid . . . must prove" that the conviction has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus. 512 U.S. at 486-87. The Heck bar applies to claims for declaratory relief. See Edwards v. Balisok, 520 U.S. 641, 648 (1997). If a judgment in favor of the § 1983 plaintiff "would necessarily imply the invalidity of his conviction . . . the complaint must be dismissed." Heck 512 U.S. at 487.

Azor's claims arose from his interactions with the defendant police officers, City, and the DOC that led to his conviction for attempted criminal possession of a weapon in the third degree. Azor has not alleged that his conviction has been reversed, expunged, invalidated, or called into question by a writ of habeas corpus. Several of his claims, which "would necessarily imply the

invalidity of his conviction," must be dismissed. Id. at 487. The following federal claims are Heck-barred: (1) Fourth Amendment claims for unlawful search and seizure that produced weapon; (2) Fifth Amendment claim for preventing plaintiff from calling his attorney; (3) Fourteenth Amendment Equal Protection Clause claim for racial profiling; and (4) conspiracy to violate plaintiff's civil rights by securing his conviction. See, e.g., United States v. Arango, 966 F.2d 64, 66 (2d Cir. 1992) (guilty plea to cocaine possession waived defendant's right to challenge search of van where drugs found); Woods v. Candela, 47 F.3d 545, 546 (2d Cir. 1995) (per curiam) (alleged Fourth and Fifth Amendment violations during traffic stop that resulted in conviction Heck-barred until conviction overturned); Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) (applying Heck-bar to § 1985 claim for conspiracy to manufacture evidence supporting murder conviction); Duamutef v. Morris, 956 F. Supp. 1112, 1117 (SDNY 1997) (Sotomayor, J.) (barring claim that officers framed plaintiff based on membership in New African Liberation movement).

The following state law claims are also Heck-barred: (1) malicious prosecution (including claims that defendants planted evidence and filed a false report); (2) New York constitutional claim under Art. I § 12 for unlawful search and seizure that produced weapon; (3) unlawful arrest/false imprisonment; (4) malicious abuse of process claim; and (5) New York constitutional claim under Art. I § 11 for violation of equal protection based on racial profiling. See, e.g., Berman v. Turecki, 885 F. Supp. 528, 532 (2d Cir. 1995) (barring claim that search warrants were based on lies because claim would imply search producing weapon was invalid); Zarro v. Spitzer, 274 Fed. Appx. 31, 34 (2d Cir. 2008) (barring malicious abuse of process claim); Duamutef, 956 F. Supp. at 1116 (barring malicious prosecution claim). Although a claim for unlawful arrest and false imprisonment may not be Heck-barred if there is independent, non-

tainted evidence supporting the conviction, there is no additional evidence in Azor's case. Throwing out the evidence obtained from Azor's traffic stop would eliminate the only evidence supporting his conviction. See Covington v. New York, 171 F.3d 117, 123 (2d Cir. 1999) (remanding to determine if false arrest claim necessarily implied invalidity of conviction).

### C. Claims that fail to allege a constitutional violation

Azor makes several additional claims under 42 U.S.C. § 1983 for violations of his federal constitutional rights. Section 1983 "is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)) (internal quotation marks omitted). The Court analyzes § 1983 claims by examining the specific constitutional rights allegedly infringed. See Graham, 490 U.S. at 394.

Azor alleges that defendants Carita, Kienle, and Devine used excessive force against him in violation of his Fourth Amendment rights during the traffic stop that led to Azor's arrest. Compl. at ¶¶ 29, 33. Excessive force violates the Fourth Amendment when it is objectively unreasonable judged "in light of the facts and circumstances confronting [an officer] without regard to [his] underlying intent or motivation." Id. at 395, 397. Azor alleges that the defendant officers "roughly grabbed" him to search his pockets and "pushed [him] on to a rear door of the Police vehicle." Compl. at ¶¶ 29, 33. Azor's allegations fail to state a cause of action under the Fourth Amendment. The defendants' "rough grab[]" and "push" were minimal and reasonable uses of force incidental to searching Azor to make sure he was not armed. See Graham, 490 U.S. at 396 (recognizing "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion"). Azor fails to state a claim for excessive force.

7

Azor also alleges that defendants Carita, Kienle, and Devine violated his Fourth Amendment rights when they "ordered" him to "remove his shirt, shoes and pants" during his processing at the 67th precinct. Compl. at ¶ 40. Prison officials may strip-search[4] an arrestee charged with a minor offense if they "have a reasonable suspicion that the arrestee is concealing weapons . . . based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." Wachtler v. County of Herkimer, 35 F.3d 77, 81 (2d Cir. 1994) (quoting Weber v. Dell, 804 F.2d 796, 802 (2d Cir. 1986)). Because defendants arrested Azor for possessing a hidden weapon under his car hood, they had reasonable suspicion justifying a strip-search for additional concealed weapons before booking him. Cf. Wachtler, 35 F.3d at 81 (reasonable to strip-search arrestee for speeding infraction where arrestee refused to identify himself and was carrying $1,000 cash). Azor's strip search challenge fails.

Azor also alleges violations of his Fourteenth Amendment rights[5] based on his treatment during his pre-trial detention. Compl. ¶¶ 40-47, 57-61. "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection of deprivation of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee." Bell, 441 U.S. at 535. Confinement necessarily curtails a detainee's freedom. "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to 'punishment.'" Id. at 539. Azor complains that he was held for more than twelve hours "without

---

[4] Azor does not explicitly state that he was strip-searched; in fact, he says that he "refused to remove his pants." Compl. at ¶ 40. Given plaintiff's *pro se* status, the Court interprets Azor's complaint to allege a strip-search.
[5] Azor alleges a "Ninth Amendment [claim] . . . to be left alone." Compl. at 18. There is no cause of action under the Ninth Amendment. See Tennessee Elec. Power Co. v. Tennessee Valley Auth., 306 U.S. 118, 144 (1939). Plaintiff also alleges violation of his Eighth Amendment rights for this pretrial period. Courts evaluate challenges to conditions of pretrial detention under the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979).

adequate soap, water" and with only "non-Kosher food items, obtained from soda machines."[6] Compl. at ¶¶ 47, 59. "Absent a showing of an expressed intent to punish on the part of detention facility officials" the Court looks to "whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." Bell, 441 U.S. at 538 (internal quotation marks omitted). Azor does not allege that defendants intended to punish him, and there are rational reasons of economy and efficiency not to provide a temporary pre-trial detainee with a particular meal or the means to bathe, especially when he is offered other food and his detention lasts a half-day. Azor also alleges that defendants violated his constitutional rights by addressing him with racial and religious slurs. Compl. at ¶¶ 35, 41, 46. Although abhorrent, defendants' uses of racial and religious profanities, if they occurred, do not rise to the level of a constitutional violation because Azor does not allege that they caused more than a de minimus injury. Cf. Shabazz v. Pico, 994 F. Supp. 460, 475 (SDNY 1998) (Sotomayor, J.) (finding "claim that defendants uttered racial slurs during constitutionally permitted searches [did] not rise to the level of . . . *de minimus* psychological harm"). Azor's Due Process Clause claims fail.

Azor alleges that defendants violated his First Amendment right to Free Exercise because he "was not permitted to pray . . . and was denied any provisions to effect that enjoyment" including "prayer towels," "proper head covering, prayer materials and organic provisions," "vegetarian provisions," and "Kosher food." See Compl. at ¶¶ 43, 47, 57-59. In his response to defendants' motion to dismiss, Azor elaborated that defendants "deprived [him] of time to himself in a cell to pray" and "took away from his person a pocket size Bible." Plf. Obj. at ¶ 2. Plaintiff's Free Exercise claims fail because he does not show defendants imposed a "substantial

---

[6] The Free Exercise claim inherent in Azor's implied request for Kosher foods is treated separately.

burden" on his religious beliefs. See Salahuddin v. Goord, 467 F.3d 263, 275 (2d Cir. 2006) (denying summary judgment where prisoner plaintiff showed substantial burden imposed by joint Sunni/Shiite Muslim Ramadan services).[7] Azor does not allege that he was barred from praying at any time during the entire twelve hours he was detained or that he was unable to pray during a significant religious holiday or time of day. Cf. Ford v. McGinnis, 352 F.3d 582, 593-94 (2d Cir. 2003) (finding centrality of religious feast to Muslim prisoner's Free Exercise claim "[t]he relevant question" to whether burden was substantial). Azor also does not allege that he needed his pocket Bible to pray or that his religion required him to eat special foods or use certain accoutrements during his short detention. Cf. Cruz v. Beto, 405 U.S. 319, 323 (1972) (Burger, J., concurring) ("There cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country."). Even were Azor able to show a substantial burden, defendants' actions were reasonably supported by penological interests in questioning Azor and protecting defendants' safety. See Saladhuddin, 467 F.3d at 274 (prison regulations burdening religion must be reasonably related to legitimate penological interests) (internal quotation marks omitted). Azor's Free Exercise claims therefore fail.

Plaintiff's allegations that defendants deprived him of his pocket Bible and car are not actionable under § 1983 because Azor has viable remedies for deprivation of his property under state tort law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (denying prisoner's § 1983 claim for guard's intentional damage to his personal items). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-

---

[7] Although plaintiff's Free Exercise challenge relates to his pre-trial detention, the Court is unaware of a pretrial standard separate from that applied to Free Exercise claims by post-trial detainees.

]deprivation remedy for the loss is available." Id. Azor first raises allegations about his car and pocket Bible in response to defendants' motion.[8] See Plf. Obj. at ¶¶ 2, 3. Recognizing the liberal pleading standard allowed *pro se* plaintiffs, this Court considers Azor's additional factual allegations in his opposition brief. Nonetheless, Azor's § 1983 claims for deprivation of his property fail because a "meaningful post[-]deprivation remedy" for replevin exists under state law.[9] See Hudson, 468 U.S. at 533. Azor does not allege that his car and pocket Bible were taken pursuant to a state policy, rather than the actions of individual defendants. Cf. Pangburn v. Culbertson, 200 F.3d 65, 71 (2d Cir. 1999) (Hudson-bar did not apply where plaintiff alleged police policymaker authorized officers to retain and use seized vehicles for personal use). Neither does Azor allege that he unsuccessfully attempted to reclaim his property or that defendants failed to notify him how to reclaim it. Cf. Larkin v. Savage, 318 F.3d 138, 141 (2d Cir. 2003) (reversing summary judgment where plaintiff alleged he followed instructions for reclaiming his vehicle post-arrest but that defendants thwarted him). Azor's Due Process claims therefore fail.

### D. Monell claims

Because Azor has not stated a constitutional claim against any of the defendant officers, his claims against the City also fail. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) (reversing award of § 1983 damages against city where jury concluded defendant officer did not violate plaintiff's constitutional rights); Curley v. Village of Suffern, 268 F.3d 65, 71 (2d

---

[8] Azor characterizes one claim as a violation of the Fifth Amendment's prohibition: "nor shall private property be taken for public use without just compensation." U.S. Const. Am. V. Azor's claims are better characterized under the Fourteenth Amendment. Cf. Lingle v. Chevron, 544 U.S. 528, 538 (2005) (describing classic Fifth Amendment takings cases as "permanent physical invasion" of real property and regulation depriving plaintiff of property's entire economic benefit).

[9] The City argues that plaintiff's state law claims against it are barred by the statute of limitations. Defs. Mot. Dismiss at 21-22. The Court does not reach that question. However, even if Azor's claims are barred by the statute of limitations, that fact does not deprive him of a meaningful post-deprivation remedy under Hudson. See Hellenic Am. Neighborhood Action Comm. v. New York, 101 F.3d 877, 881 (2d Cir. 1996) (holding plaintiff could not "resuscitate its due process claim" under § 1983 "simply because" limitations period had passed).

Cir. 2001) ("a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights"). Respondeat superior does not provide a basis for the City's liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978).

E. State law claims

This Court has supplemental jurisdiction over Azor's state law claims under 28 U.S.C. § 1367 because they arise out of the same facts as Azor's constitutional claims. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). The Court declines to exercise jurisdiction over Azor's remaining state law claims.

Any remaining claims not addressed above are not cognizable and therefore dismissed.

SO ORDERED.

Dated: Brooklyn, New York

March 30, 2012

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge